## WILLIAM GRAVETT

*v.*

## GEORGE MUGGE.

1. NEW TRIAL—*finding on the evidence.* In trespass for taking and carrying away lumber, where the proof showed the exact number of feet taken, and its value, amounting to $1005.71, and the proof showed that other lumber of the plaintiff was washed away, and the jury found a verdict of $3000 in favor of the plaintiff, upon which, after a *remittitur* of $1700, judgment was rendered for $1300, it was *held,* that the verdict, as returned, was so grossly in excess of the actual damages, that a new trial should be awarded.

2. DAMAGES—*exemplary, in excess in trespass.* Where the lumber of another is taken in good faith by a defendant, under the confident belief it all belonged to his principal, except a small quantity taken to save it from being washed away by a flood and lost, such defendant ought only to be responsible in actual damages, and an instruction authorizing exemplary damages should not be given.

3. SALE—*when the title passes.* Where a lot of lumber sold and paid for is delivered to the agent of the purchaser, the title will pass, although by the terms of the sale it is to be measured when delivered. The provision for measuring is one for the benefit of the seller, which he may waive.

4. TRESPASS—*taking lumber under contract of sale.* The agent of a purchaser is not liable in trespass to the former owner for taking lumber sold and delivered by the latter to the purchaser or his agent, but for whatever lumber is taken and appropriated, which had not been delivered under the contract, the party so taking will be liable.

APPEAL from the Circuit Court of Saline county; the Hon. MONROE C. CRAWFORD, Judge, presiding.

Messrs. CREBS & CONGER, for the appellant.

Mr. ANDREW D. DUFF, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This action was brought in trespass by George Mugge against William Gravett, for taking and carrying away a lot of lumber which plaintiff claims belonged to him. The lumber taken by defendant was afterwards measured, and it was

found there were in all 31,349 feet. A portion of it was good lumber, and was worth $38 per 1000 feet, and the residue was what is called "culls," and was worth $20 per 1000 feet. The exact number of feet of each kind of lumber is given, so that the precise value of that which was taken is shown to be $1005.71. On this branch of the case there is no conflict in the evidence. At the time the lumber was moved the banks of the river where it had been placed were under water to the depth of four or five feet, in consequence of which quite a quantity of refuse lumber was floated away and lost. Defendant estimates the amount to be 7000 feet, and worth not exceeding $10 per 1000 feet. On the other hand, plaintiff insists the quantity was much greater, and included much good lumber. On the trial, the jury returned a verdict for plaintiff, finding as his damages the sum of $3000, but plaintiff remitted $1700 of the amount, and thereupon the court overruled the motion entered for a new trial, and rendered judgment on the verdict for $1300, and defendant brings the case to this court on appeal.

The verdict of the jury as to the amount of damages sustained by plaintiff was so grossly wrong, that he remitted more than one-half of it. There has, therefore, been no finding as to the amount of damages, to which any importance can be attached. Our opinion is, the ends of justice will be better subserved by submitting the cause to another jury. This conclusion is the more readily adopted on account of an instruction given by the court, for plaintiff, which would warrant the belief the jury were authorized to give exemplary damages in case they found for plaintiff. The principle expressed in the instruction had no application to the facts of the case, and may have misled the jury into the error of finding so large a verdict —one that it is conceded was not warranted by the evidence. Notwithstanding the *remittitur*, it can not be known what portion of the judgment is for actual damages and what portion is for exemplary damages, which the jury, under the instruction given, were authorized to award. If any portion of the

amount for which the judgment was rendered consisted of exemplary damages, and we think, from a careful consideration of the evidence, it is certainly in excess of the actual damages sustained, it was to that extent clearly wrong. The lumber was taken by defendant in good faith, under the confident belief it all belonged to his principals, except a small quantity which was taken to save it from being washed away by the floods and lost, and if he was mistaken he ought only to be responsible in actual damages. There were strong grounds for the belief defendant had a legal right to take the lumber at any time as his own. The quantity of lumber specified in the contract of March 12, 1873, although not measured, was certainly delivered to defendant for his principals. It was all paid for, and there was such a delivery of the property as passed the title out of plaintiff. The provision in the agreement the lumber should be measured when delivered, was for the benefit of plaintiff, and was one that it was his privilege to waive, which he did do by his written agreement of August 29, 1873. So far as any of that lot of lumber was concerned, defendant was at liberty to take it as the property of his principals, and was not liable in trespass or otherwise for intermeddling with it. Whether the lumber mentioned in the contract of August 12, 1873, was ever delivered to defendant on the same terms, is left in doubt by the evidence, and is fairly a question to be submitted to a jury.

Great confusion was caused by the destruction by fire of a large amount of the lumber got out by plaintiff, with which to fulfill his contracts. The evidence does not disclose, with any certainty, what lumber it was that defendant removed, whether it consisted of the lumber delivered on the first or second contract, or other lumber or portions of all lots. As we understand the evidence, it was taken from the "burnt district," and from where the lumber had been "torn away" to stop the ravages of the fire, but other lumber may have been placed there either before or after the fire. On another trial, the evidence may show more exactly what was taken.

.There is, perhaps, no dispute that the "culls" that remained in those districts after the fire belonged to the plaintiff. It is clear, that if any portion of the lumber defendant removed was that which had been delivered under the first contract, he was not liable for it, and the same is true as to that mentioned in the second contract, if it shall be found it was in fact delivered on the same terms as that embraced in the first contract. Whatever lumber belonging to plaintiff may have been appropriated by defendant, that had not been previously delivered to him on one or the other contract, he is, of course, responsible for it. As the case may be tried again, we have forborne to remark upon the weight of the evidence as to the delivery of lumber under the second contract on the same terms as under the first contract, preferring that that question shall be submitted to the jury unembarrassed by any views we may entertain regarding it.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*